UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/12/2022

———————————————————————x

In re:

      ALL YEAR HOLDINGS LIMITED,           21-12051 (MG)

          Debtor.

———————————————————————x

      ZELIG WEISS,

          Appellant,

      -against-                 22 Civ. 8867 (CM)

      ALL YEAR HOLDINGS LIMITED,
      YGWV LLC, and WYTHE BERRY
      MEMBER LLC,

          Appellees.

———————————————————————x

## MEMORANDUM DECISION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S DECISION

### <u>INTRODUCTION</u>

McMahon, J.:

    This case comes before the court on an expedited appeal by Zelig Weiss, who filed a complaint in Appellee All Year's chapter 11 case against All Year and an affiliated entity, YGWV, only to have his case dismissed by the bankruptcy court (Glenn, B.J.). After considering the parties briefs and arguments, the Bankruptcy Court's order is AFFIRMED – largely on the opinion below.

The facts pertinent to this appeal are recited fully in Judge Glenn's thoughtful and thorough opinion and will not be repeated in detail here. Appellant Weiss, through various entities, operates the luxury William Vale Hotel in Brooklyn. He is also a 50% owner of the hotel, by virtue of his membership in an entity known as Wythe Berry Member LLC. The other 50% owner of Member LLC Appellee YGWV; YGWV also serves as the managing member of Member LLC. Appellee All Year owns a 100% interest in YGWV.

YGWV and Appellant executed, and are the only parties to, a Member LLC Limited Liability Company Agreement (the "Member LLC Agreement"). That agreement contains a provision that prohibits either Member (YGWV or Appellant) from transferring its membership interest in Member LLC absent the other party's consent. All Year is not a party to the Member LLC Agreement; it is specifically identified in that Agreement as the Lender to the LLC – not as a Member of Member LLC – and as a third-party beneficiary of certain specified provisions of the Member LLC Agreement. (A121 §§ 11.1–11.2; Dkt. No. 7).[1] Other provisions of the Agreement make it clear that All Year and YGWV are separate entities, notwithstanding the fact that All Year created and wholly owns YGWV; Weiss signed the Member LLC Agreement with full knowledge that All Year had been removed as a Member.

All Year filed for chapter 11 protection in December 2021 and has continued to operate its business as a debtor-in-possession. Pursuant to its proposed chapter 11 plan of reorganization (the "Plan"), All Year's interests will vest on the effective date of the Plan in a wind-down entity to be formed for the benefit of, and controlled by, All Year's impaired creditors ("Wind Down Co."). As part of that transaction, All Year's interest in YGWV is being sold to a third-party

---

[1] All references to the "A–" are to Plaintiff-Appellant's Bankruptcy Record Appendix (Dkt. No. 7) and the Appendix's original pagination unless otherwise noted.

entity, Paragraph Partners LLC ("Paragraph"); this arrangement was made after negotiations between All Year and Weiss to sell All Year's interest in YGWV to Weiss failed to result in a final signed agreement.

In his complaint, Weiss alleges that All Year's transfer of its interest in YGWV to Paragraph without Weiss' consent violates the Member LLC Agreement. He argues that All Year should be deemed a party to the Member LLC Agreement – despite the fact that the Agreement is between Weiss and YGWV and specifically acknowledges that All Year cannot be equated with its wholly-owned subsidiary – either because All Year negotiated the Member LLC Agreement, or because YGWV is the alter ego of All Year. Weiss alleges that both All Year and YGWV have violated both the literal terms of the contract and the covenant of good faith and fair dealing by agreeing to transfer All Year's interest in YGWV to Paragraph; he seeks to enjoin the proposed transaction.

Weiss further alleges that, as a matter of New York law, All Year's chapter 11 filing automatically and immediately terminated its membership interest in YGWV, which in turn automatically resulted in YGWV's dissolution. Appellant seeks a declaration to that effect, as well as an order allowing him to assume management control of Member LLC and the entity that owns the William Vale Hotel.

In a well-reasoned and thorough decision (the "Order"), the Bankruptcy Court dismissed Appellant's complaint on multiple independently sufficient grounds. The Bankruptcy Court properly rejected Appellant's attempt to bind a non-party (All Year) to the Member LLC Agreement; dismissed his contention that the New York Limited Liability Company Law ("NYLLCL") mandates the automatic termination of an LLC when any member declares bankruptcy; and held that Weiss' reading of Sections 701(b) and 603(a) of the NYLLCL would

in any event be preempted by the Bankruptcy Code. Seeing no error in the learned Bankruptcy Judge's reasoning, this court affirms Judge Glenn's order.

## STATEMENT OF THE CASE

As this is an appeal from a motion to dismiss a complaint, the well-pleaded non-conclusory factual allegations of the amended complaint are presumed true. The Bankruptcy Court's conclusions of law are reviewed de novo. See *In re Belmonte*, 931 F.3d 147, 152 (2d Cir. 2019).

The relevant contract (the Member LLC Agreement) contains a Delaware choice of law provision, so it governed by Delaware law. In his reply brief, Weiss asserts that any contract claims should be governed by New York law, but he made no such argument in the court below, so even if it had merit (and it does not), he cannot so assert on this appeal.

YGWV is a limited liability corporation organized under the law of the State of New York. As a result, New York law governs claims against it that do not arise out of any alleged breach of the Member LLC Agreement. See, e.g., *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995).

## I.     Factual Background

### A.   *Ownership of the William Vale Hotel*

Appellant's claims involve his indirect ownership interest in the William Vale Hotel in the Williamsburg neighborhood of Brooklyn, New York. Appellant originally held partial title to the William Vale indirectly through an entity called Wythe Berry LLC ("WB LLC"), in which he held a 50 percent membership interest. Yoel Goldman (All Year's former principal) held the remaining 50 percent membership interest and served as managing member. (A77–78, 83 ¶¶ 2, 24). Appellant currently owns his indirect interest in the William Vale through Member LLC.

4

In approximately September 2016, Goldman proposed a refinancing transaction to close out the William Vale's construction loan. (A83–84 ¶ 25). Under Goldman's proposal, All Year issued a bond series (the "Series C Bonds") and the proceeds of the bond issuance would refinance the William Vale's existing mortgage and WB LLC's corresponding debts. (A84 ¶ 27). As part of the refinancing, WB LLC transferred title to the hotel to a new entity—Wythe Berry Fee Owner, LLC ("Fee Owner"). (A84 ¶ 28). WB LLC then leased the William Vale from Fee Owner. (A84 ¶ 28). Member LLC, a newly created special-purpose vehicle, would own Fee Owner. (A84, 86 ¶¶ 28, 33).

During the early discussions regarding the refinancing, Appellant and Goldman were both going to own Member LLC as 50 percent co-members. (A84 ¶ 28).

Although Appellant owned his 50 percent membership interest in his individual capacity, Goldman chose to own his membership interest indirectly through another entity. (A84–85 ¶¶ 30-31). Initially, this entity was going to be All Year. (A85–86 ¶¶ 31–32). But in late January 2017, Goldman informed Appellant that a new entity, YGWV, needed to act as manager of the special-purpose vehicle Member LLC instead of All Year, as originally contemplated. (A86 ¶ 33). Appellant accepted Goldman's proposal, and Debtor formed YGWV shortly before closing on the refinancing solely to hold the 50 percent membership interest in Member LLC and act as Member LLC's manager. (A86 ¶ ¶ 29, 34).

As the core of the refinancing, Mishmeret Trust Company Ltd., the Trustee for the Series C bondholders, loaned over $165 million to All Year pursuant to the Series C Bonds. (A86 ¶ 35). All Year in turn loaned the bond proceeds to Fee Owner pursuant to a promissory note between All Year and Fee Owner that was secured by a mortgage against the William Vale. (A86 ¶ 36). Member LLC also guaranteed the Series C Bonds pursuant to a guarantee in favor of Mishmeret,

and All Year conditionally assigned the note and mortgage to Mishmeret as security for the Series C Bonds. (A86 ¶ 36). Fee owner used the loan to pay WB LLC's debts, including the mortgage on the William Vale. (A86 ¶ 36).

### B.    *The Member LLC Agreement*

YGWV and Appellant are the only signatories to the Member LLC Agreement. (A113). YGWV and Appellant chose Delaware law to govern the Member LLC Agreement. (A121 § 10.4). The parties also agreed to an integration clause providing that the Member LLC Agreement "constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes all prior understandings or agreements between the parties." (A121 § 10.3).

Several other provisions of the Member LLC Agreement are relevant to Appellant's claims.

- Section 8.1 is the anti-assignment provision, which provides that a "Member"— defined in the Agreement as only YGWV and Appellant — "may not assign in whole or in part any interest in [Member LLC] without the written consent of the other Members." (A119 § 8.1).

- Section 5.3 specifically acknowledges that YGWV, Appellant, and any of their affiliates (*e.g.*, All Year) "may engage in or possess an interest in other business ventures of every kind." (A117 § 5.3).

- Section 11.3 requires that the managing member of Member LLC (i.e., YGWV) "shall be a corporation or limited liability company whose sole asset is its interest in the Company." (A123–24 § 11.3(o)).

- Sections 11.1, 11.3 and 11.4 further (i) provide for recognition of All Year as lender under the Security Agreement, A121 § 11.1; (ii) provide that All Year is a third party beneficiary of the provisions of Article 11 (which is titled "Single Purpose Provisions"), A121 § 11.2; and (iii) acknowledge that All Year is "a wholly separate and distinct Person" from YGWV and that no claim against YGWV "shall give rise to any claims or defenses" against All Year "in its capacity as lender *or otherwise*." (A124-25 § 11.4 (emphasis added)).

On the same day they executed the Member LLC Agreement, YGWV and Appellant also entered into a Unanimous Written Consent on behalf of Member LLC, which states that Fee Owner would borrow funds from All Year. (A129–32).

6

YGWV and Appellant then authorized Member LLC, as guarantor, and Fee Owner, as borrower, to enter into the loan with All Year, as lender. (A130). Further, they resolved that Goldman would be the authorized signatory on behalf of Member LLC, as guarantor, and Fee Owner, as borrower, to execute the loan from All Year, as lender. (A130–31).

In his complaint Weiss pleads that it was his intention to do business only with Goldman, which is why he insisted on the restriction on YGVW's ability to transfer its interest in Member LLC. (A86–87 ¶ 37). However, no provision in the Member LLC Agreement mentions Goldman.

### C.   *Appellant's Domination and Control Allegations*

Appellant's pleading alleges that YGWV is All Year's alter ego. As Judge Glenn found, the Amended Complaint contains factual allegations that would support such a conclusion. All Year owns 100 percent of YGWV, and thus is YGWV's sole and managing member. (A90 ¶ 50). As managing member, All Year effectively makes all decisions for YGWV. (A91 ¶ 59). The Debtor created YGWV solely to hold All Year's membership interest in the special-purpose vehicle Member LLC, and YGWV thus does not conduct any business and only generates revenue from its indirect interest in Fee Owner. (A90 ¶ 51). Consequently, YGWV does not have its own office or employees, and does not observe corporate formalities such as keeping minutes of meetings. (A90–91 ¶¶ 55–57).

YGWV also does not have its own bank account, and therefore cannot receive, distribute, or transfer funds. (A90 ¶ 52). Similarly, YGWV does not pay expenses it incurs because All Year pays (or arranged an affiliate to pay) them. (A90 ¶ 53).

### D.   *The Challenged Transaction*

Approximately six weeks before All Year filed its chapter 11 petition, Appellant offered to purchase All Year's membership interest in YGWV. (A91 ¶ 60). After All Year filed for chapter

11 protection on December 14, 2021, All Year and Appellant continued to discuss a sale of All Year's membership interest in YGWV. Weiss presented All Year with a draft agreement to that effect around January 14, 2022. (A91–92 ¶¶ 61–62). Three days later, All Year informed Appellant that it would not sell All Year's interest in YGWV but would instead sell YGWV's interest in Member LLC. (A92 ¶63). The Debtor and Appellant then negotiated a Membership Interest Purchase Agreement ("MIPA"), whereby, among other things, YGWV would sell its membership interest in Member LLC to Weiss. (A92 ¶ 65).

Around March 9, 2022, All Year informed Appellant that, although YGWV was not in bankruptcy, it had concluded that the bankruptcy court approval would have to approve the sale of YGWV's interest in Member LLC. (A92 ¶ 66). All Year revised the MIPA to incorporate such a requirement. (A92 ¶ 66).

On March 14, 2022, Appellant asked to change the structure of the deal so that he could buy All Year's interest in YGWV instead of YGWV's interest in Member LLC – in other words, the deal he originally proposed. (A92–93 ¶ 67). The Debtor rejected Appellant's proposed deal structure. (A93 ¶ 68). Per the Amended Complaint, negotiations nonetheless continued, and a revised version of the MIPA was, with All Year's knowledge and approval, attached by Mishmeret to a filing that it (not All Year) made on the Tel Aviv stock exchange on or about March 27, 2022. (A93 ¶ 69). However, the parties did not sign the MIPA.

In April 2022, All Year signed an agreement to sell its interest in YGWV to Paragraph (the "Plan Sponsor"). Although Weiss alleges that this sale was for essentially the same consideration that Weiss was prepared to pay, (*Id.*), Paragraph in fact agreed to acquire the rest of All Year's real estate portfolio – not simply to purchase its interest in YGWV. (A93 ¶¶ 71–72).

On May 31, 2022, All Year filed its Plan. (A94 ¶ 76). The Plan contemplated that All

Year's interest in YGWV would be disposed of to Paragraph ("the Plan Sponsor"), as indicated in the April 2022 agreement. It further provided that, if the Plan Sponsor failed to meet certain conditions precedent to closing the deal contemplated in the April 2022 agreement, All Year's interest in YGWV (along with its other real estate holdings) would be transferred to Wind-Down Co., a new entity to be managed by a plan administrator. (A95–96 ¶ 82).

The deal between All Year and Paragraph has not, in fact, closed. When he wrote his decision, Judge Glenn understood that disputes between the parties had been resolved. However, in its brief to this court, All Year advises that, on November 9, 2022 (i.e., after the Bankruptcy Court's decision), All Year served a notice of default on the Paragraph, alleging a failure by the Plan Sponsor to comply with its contractual obligations under the parties' Investment Agreement. (Appellee Brief 19 n.2; Dkt. No. 8). All Year takes the position that, if the Plan Sponsor's breach is not cured within the time provided by the Investment Agreement, All Year may seek to terminate the Investment Agreement and propose a different plan of reorganization. These issues post-date the filing of the instant adversary proceeding and are not the subject of this appeal.

## II.  Procedural Background

On July 5, 2022, Appellant initiated an adversary proceeding by filing his initial complaint. (A9–75). On August 4, 2022, Appellant filed his now-operative Amended Complaint. (A76–144). On the same day he filed the Amended Complaint, Appellant also filed a motion for partial summary judgment along with a motion for a preliminary injunction (which was withdrawn). (A145–93). On August 18, 2022, Defendants filed their motion to dismiss the Amended Complaint. (A641–85). On September 1, 2022, Appellant filed his joint brief opposing the motion to dismiss and in reply to his motion for summary judgment. (A789–820).

On September 13, 2022, Chief Bankruptcy Judge Martin Glenn heard oral argument on

Appellant's motion for summary judgment and Defendant's motion to dismiss. (A821–918). At

the Bankruptcy Court's request, the parties submitted supplemental briefing. (A919–935). The

Bankruptcy Court entered its Order dismissing the Amended Complaint in its entirety on October

4, 2022. (A936–72).

On October 7, 2022, Appellant filed his notice of appeal. (A973–1018).

### III.   The Bankruptcy Court Properly Dismissed Appellant's Claims I & IV for Breach of the Member LLC Agreement's Anti-Assignment Provision

In Claim I of the Amended Complaint, Weiss seeks a declaratory judgment that the

Member LLC Agreement prohibits All Year from transferring its interest in YGWV absent his

consent. In Claim IV, Weiss seeks to enjoin any such transfer. (A99 ¶ 101).[2]

Weiss asserts these claims against both All Year and YGWV. As against YGWV, the claim

is easily disposed of: YGWV cannot possibly have breached the Member LLC Agreement because

it is not alleged to have agreed to transfer its interest in Member LLC to anyone else. Section 8.1

of the Member LLC Agreement provides that a Member— defined only as YGWV and

Appellant—"may not assign in whole or in part any interest in [Member LLC] without the written

consent of the other Members." (A119 § 8.1). Appellant nowhere alleges YGWV has or will assign

*its* interest in Member LLC.

The challenged transaction is a transaction between All Year and the Plan Sponsor,

pursuant to which All Year is transferring its interest in YGWV to Paragraph. If that transaction is

consummated, YGWV will still retain its interest in Member LLC There is, therefore, no basis

whatsoever to declare that YGWV is in violation of its contractual duty to obtain Weiss' consent

---

[2] Injunction is a form of relief, not a separate cause of action. *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 149 (S.D.N.Y. 2003). Counts I and IV are essentially identical.

to a transfer of YGWV's interest, and the claim as against YGWV must be dismissed.

Weiss also asserts that All Year – which is not only a non-signatory to the Member LLC Agreement, but which is specifically identified in that agreement as a third-party beneficiary of certain of its terms – is nonetheless bound by the Agreement, either because YGWV is its alter ego theory, (A80 ¶ 9), or because All Year manifested an intent to be bound to the Member LLC Agreement, (A79 ¶ 8). The Bankruptcy Court correctly rejected both of these theories.

### A.     *The Bankruptcy Court Correctly Held Appellant Failed to Adequately Plead that All Year Dominated YGWV to Commit a Fraud or Wrong*

"It is fundamental that a parent is considered a legally separate entity from its subsidiary, and cannot be held liable for the subsidiary's actions based solely on its ownership of a controlling interest in the subsidiary." *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014). However, under New York law, a court may pierce the corporate veil where (1) "the owners exercised complete domination of the corporation in respect to the transaction attacked"; and (2) "such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 273 (S.D.N.Y. 2004).

There is no question that Weiss pleaded facts from which the first prong of the alter ego test can be inferred. Judge Glenn so held, and All Year does not challenge that conclusion. That being so, Appellant argues that his motion to dismiss should not have been denied, could not be denied, because motions to dismiss alter ego claims raise questions of fact that cannot be resolved on such motions.

But in both of the cases Appellant cites in support of this assertion, the parent denied that it sufficiently dominated and controlled a subsidiary. *Sphere Digital, LLC v. Armstrong, 2020*

11

*WL 6064156*, at *5 (S.D.N.Y. Oct. 14, 2020); *Advanced Video Techs., LLC v. HTC Corp.*, 2019
WL 4198769, at *14 (S.D.N.Y. Aug. 12, 2019).

That issue is not in dispute here.

Rather, the issue presented by this case -- as Judge Glenn correctly recognized -- is
whether All Year's domination and control of YGWV, which is presumed to exist on a motion to
dismiss, is of any import as a matter of law. The precise issue before the Bankruptcy Court was
whether the Amended Complaint contains factual allegations that, if proved, would allow a trier
of fact to infer that All Year's domination and control of YGWV was used to perpetrate a wrong
against Weiss – specifically, the alleged wrong of All Year's transferring its interest in YGWV
without obtaining Weiss' consent. Courts properly grant motions to dismiss alter ego claims
when a complaint fails to allege that the parent's alleged domination and control of the
subsidiary either is not exercised in connection with the transaction at issue or was not used to
perpetuate a fraud or some other wrong against the plaintiff. See, e.g., *Steadfast Ins. Co. v. T.F.
Nugent Inc.*, 513 F. Supp. 3d 419, 425 (S.D.N.Y. 2021); *VariBlend Dual Dispensing Sys. LLC v.
Crystal Int'l (Grp.) Inc.*, 2019 WL 4805771, at *19 (S.D.N.Y. Sept. 30, 2019)/

Judge Glenn did not err in concluding that the Amended Complaint, fairly read, did not
allege facts from which one could infer that the second prong of the alter ego test could be met.

    i.    *All Year's Alleged Domination and Control of YGWV Is Not With Respect
To All Year's Purported Transfer of Its Interest in YGWV under the Plan*

As the Bankruptcy Court correctly noted, the Amended Complaint alleges All Year
dominated and controlled YGWV generally, but fails to plausibly allege that such domination
and control occurred in, "respect to the challenged transaction—the purported transfer of All
Year's interest in YGWV to another entity," pursuant to the Plan. (Glenn Order, A993). This is
not surprising, since a parent corporation can transfer its own shares in a subsidiary without the

latter's involvement or assent. Assuming the proposed transaction with Paragraph goes forward, All Year alone will transfer its interest in YGWV pursuant to its Plan; YGWV will do nothing at all. The Amended Complaint does not allege otherwise. This is fatal to Weiss' alter ego claim.

Appellant argues that All Year used YGWV as a "pawn," (Appellant Brief 34, Dkt. No. 6; Hearing Transcript 23),[3] in its dealings with Weiss. But significantly, Appellant does not allege that All Year has or will, directly or indirectly, cause YGWV to assign its interest in Member LLC – an allegation that, if proven, might support a conclusion that YGWV was All Year's "pawn." Instead, the only pleaded fact tending to support the "pawn" argument is that All Year caused YGWV to decline Appellant's offer to buy most of YGWV's interest in Member LLC. (Appellee Br. at 27; A93 ¶¶ 68–71).

Unfortunately for Appellant, the Amended Complaint contains no allegation that YGWV was required to accept an offer from Weiss – which is understandable, because nothing in the Member LLC Agreement required YGWV to accept Appellant's offer (it was not). Nor does the Amended Complaint seek an injunction that would require YGWV to consummate any transaction with Weiss. The only transaction challenged as wrongful in the Amended Complaint is All Year's transfer of its interest in YGWV pursuant to the Plan. Accordingly, as the Bankruptcy Court correctly recognized, All Year's allegedly causing YGVW to decline Weiss' offer to purchase does not demonstrate abuse of the corporate form in connection with the challenged transaction – the transaction whereby All Year plans to sell its own interest in YGWV to a third party. That allegation thus does not prevent the amended complaint from being insufficient as a matter of law on an alter ego theory. (A950–52).

---

[3] The official transcript for the oral argument held on December 1, 2022, has not yet been filed on the Southern District of New York's ECF docket for this case.

In sum, this court cannot see any reason why Judge Glenn's decision on this issue should be overturned.

    ii.    *Alleged Domination and Control by All Year of YGWV Was Not Used To Commit a Fraud or Actionable Wrong*

Judge Glenn also concluded that Appellant failed plausibly to allege that All Year's domination and control of YGWV caused a fraud or other actionable wrong against Weiss. Again, he was correct.

A parent corporation does not cause its subsidiary to breach its contract by selling the parent's interest in the subsidiary where, as here, the contract limits only the subsidiary's right to sell its own interest in yet another entity. However, even if Appellant had plausibly alleged that YGWV breached its contract, it is hornbook law (as Chief Judge Glenn correctly held) that a breach of contract is not the type of "fraud or wrongful act" that will support an alter ego claim. (Glenn Order, A993–94). *Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 34 (S.D.N.Y. 2018); *World Wide Packaging, LLC v. Cargo Cosmetics, LLC*, 193 A.D.3d 442, 443 (1st Dep't 2021); *TMCC, Inc. v. Jennifer Convertibles, Inc.*, 176 A.D.3d 1135, 1136 (2d Dep't 2019); *see also* 2 N.Y. Prac., Com. Litig. in New York State Courts § 8:74 (5th ed.).

But breach of contract – specifically, breach of YGWV's contractual obligation not to sell its interest in Member LLC without Weiss' consent – is the only wrong against All Year that is alleged in the complaint. The cases cited by Weiss all involve allegations that a parent exercised domination and control over a subsidiary in some way that perverted the corporate form. There is no allegation in Weiss' complaint that All Year has exercised its domination and control over YGWV in a way that will cause YGWV to be stripped of its assets or render YGWV incapable of paying its bills or making good on its own obligations. There is no allegation in Weiss' complaint that All Year's transfer of its interest in YGWH to Paragraph or

14

Wind-Down Co. will cause YGWV to transfer its interest in Member LLC. And there is no allegation in Weiss' complaint that Paragraph or Wind-Down Co. will cause YGWV to transfer its interest in Member LLC or breach any of its contractual obligations. The lack of any such allegations renders the Amended Complaint fatally deficient. See, e.g., *Mirage Entm't*, 326 F. Supp. 3d at 34; *TMCC*, 176 A.D.3d at 1136.

Weiss argues on appeal, as he argued below, that he insisted on the restriction on transfer in the Member LLC Agreement because he had owned the hotel in partnership with Goldman and he only wanted to be partners with Goldman. (Appellant Br. 43–44, A86–87 ¶ 37). But the fact is, Weiss signed a contract that never once mentions Goldman, and that does not restrict Goldman from doing anything. Goldman is not a member and there is no express requirement that Goldman be involved in the business of the Members. And of course, only Members are prohibited from transferring their interest in the business without consent.

If Weiss had wanted to ensure that Goldman would remain on the hook, he could have included language to that effect in the contract. As it stands, the contract's integration clause bars Weiss from arguing an intention that is not reflected in the terms of the contract itself. The Agreement is clear on its face and parol evidence about Weiss' intentions or desires cannot be relied on to vary the terms of Section 8.1 (A121 ¶¶ 10.3, 10.5).

Appellant's alter ego cases are distinguishable. For example, *Brown v. Kinross Gold, U.S.A., Inc.*, 531 F. Supp. 2d 1234 (D. Nev. 2008), applied Nevada's more lenient standard where a "wrongful purpose" need not be shown, and a mere breach resulting in an inequitable result could suffice (which is contrary to New York law). *Brown*, 531 F. Supp. 2d at 1242. And the alleged domination and control of the corporation in that case caused a breach, and shareholder losses for which they had no other recourse. *Id.* at 1243. In contrast, here the parent

15

(All Year) is allegedly transferring its own asset (its interest in YGWV), and its alleged domination and control of YGWV will not cause a breach of the Member LLC Agreement.

Appellant's other cases involved more than a mere breach of contract for the alleged wrong. For example, in *District Council No. 9 v. APC Painting, Inc.*, 272 F. Supp. 2d 229 (S.D.N.Y. 2003), the principal dominated and controlled an entity (e.g., causing it to dissolve) to frustrate enforcement of a properly issued arbitration award. The court in *Hutchins v. Conciliation & Appeals Bd.*, 480 N.Y.S.2d 684 (Sup. Ct. N.Y. Cnty. 1984), likewise involved a corporate tenant established to exploit for commercial purposes rent stabilization laws through a subleasing operation. And *PanAmerican Mineral Servs., Inc. v. KLS Enviro Res.*, Inc., 916 P.2d 986 (Wyo. 1996), confined its alter ego analysis to whether the allegations were sufficient for personal jurisdiction purposes and did not consider whether the allegations would be sufficient for liability under the contract.

### B.    The Bankruptcy Court Correctly Held Appellant Failed to Adequately Plead that All Year Manifested an Intent to Be Bound by the Member LLC Agreement

As an alternative to alter ego, Appellant alleged that All Year, while not a signatory to the Member LLC agreement, nonetheless manifested an intent to be bound by the Agreement. Appellant's argument that a non-signatory to a contract can nonetheless be bound by it as a matter of contract law, even if it is not the alter ego of a signatory, (Appellant Br. 36), finds no support in Delaware law, which, per Section 10.4, is the governing law chosen by the signatories to the contract. (A121). Under Delaware contract law, "only a party to a contract may be sued for breach of that contract." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 172 (Del. 2002) (parent corporation could not be held liable for wholly-owned subsidiary's breach of limited partnership agreement because parent corporation was not party to the agreement); see also *In re Teekay Offshore Partners L.P. Common Unitholders Litig.*, 2021 WL

16

1227415, at \*9 (S.D.N.Y. Mar. 31, 2021); *Bandera Master Fund LP v. Boardwalk Pipeline Partners, LP*, 2019 WL 4927053, at \*21 (Del. Ch. Oct. 7, 2019).

The mere fact that a parent was involved in negotiations that lead to a contract between one of its subsidiaries and some other party – which is what the Member LLC Agreement is -- does not render the parent liable under a contract it did not execute as a matter of Delaware law. If a non-signatory to a contract, including a parent corporation, is to be bound by the terms of that Agreement, the "contract itself . . . must contemplate that non-signatories may adopt it." *Ninespot, Inc. v. Jupai Holdings Ltd.*, 2019 WL 1650065, at \*4 (D. Del. Apr. 17, 2019) (affiliates of signatory to contract were not bound by the terms of the agreement because (i) affiliates were non-signatories and (ii) contract did not contemplate adoption by non-signatories).

Otherwise, parol evidence bars consideration of extrinsic evidence to alter, modify or contradict the terms of a fully integrated agreement. See, e.g., *Marina View Condo. Ass'n of Unit Owners v. Rehoboth Marina Ventures*, LLC, 2019 WL 3770215, at \*4 n.38 (Del. Ch. Aug. 12, 2019); see also *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006). This is particularly true where, as here, the agreement (A121 § 10.3) has an integration clause. See *Levy Family Invs., LLC v. Oars + Alps LLC*, 2022 WL 245543, at \*9 (Del. Ch. Jan. 27, 2022); see also *Highlands Ins. Grp., Inc. v. Halliburton Co.*, 2001 WL 287485, at \*8 (Del. Ch. Mar. 21, 2001), aff'd, 801 A.2d 10 (Del. 2002).

Here, the Member LLC Agreement is utterly unambiguous on the question of All Year's lack of intent to be a party to that agreement, or to be bound by its terms. Indeed, as Chief Judge Glenn found, Plaintiff's own allegations make it crystal clear that All Year affirmatively manifested an intent not to the bound by the contract – and Weiss acceded to that manifestation. Consider:

17

(1)     The contract by its terms is by and between Appellant and YGWV. Each is identified as a "Member" and together they are the "Members." (A113). No one else is identified in the Agreement as a party to the Agreement. All Year was originally to be Weiss' counterparty to the Agreement but removed itself from that role during the negotiation and drafting of the LLC Agreement.

(2)     Section 8.1, which contains the restriction on transfer, is expressly limited to "Members," which is a defined term in the Member LLC Agreement – defined as Weiss and YGWV.

(3)     Section 11.1 of the Member LLC Agreement identifies All Year as the "lender" to the LLC, and Section 11.2 specifically makes it a third-party beneficiary of a limited number of provisions in the Member LLC – a status inconsistent with a finding that All Year intended to be bound by the contract.

(4)     In Section 11.4 of the Member LLC Agreement, the LLC acknowledges that Lender (All Year) is "a wholly separate and distinct Person from .....YGWV LLC, a New York limited liability company, and Wythe Berry LLC, a New York limited liability company" and agrees that "no claims of any kind of nature against the Company (Wythe Berry LLC) or any Wythe Entity....shall give rise to any claims or defenses against the Lender in its capacity as lender or otherwise...."

In short, every single objective manifestation in the actual contract indicates in no uncertain terms that All Year did not wish to be a party to the contract and refused to be bound by the terms of the contract. As Chief Judge Glenn correctly recognized, this distinguishes our case from cases in which a parent corporation objectively manifested and communicated its intent to be contractually responsible for its subsidiary's obligations. (Glenn Order, A996).

Appellant relies on cases decided under New York law for the proposition a parent's participation in negotiations binds it to its subsidiary's contract. (Appellant Br. 29–32). To the extent that these cases recognize a theory that is not recognized under Delaware law, they are irrelevant and should not even be discussed.

However, I agree with the learned Chief Bankruptcy Judge that the New York case on which Appellant relies most heavily, *Horsehead Industries v. Metallgesellschaft AG*, 239 A.D.2d 171, 171 (N.Y. 1st Dep't 1997), does not support Appellant's argument that a parent not deemed

to be the alter ego of a subsidiary can still manifest an "intent to be bound" – a theory that, as explained above, the Bankruptcy Court appropriately rejected. (Glenn Order, A995). Other courts have recognized that *Horsehead*'s "intent to be bound" theory required satisfaction of alter ego requirements. See, e.g., *Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc.*, 2020 WL 3051768, at *8 n.4 (S.D.N.Y. June 8, 2020); *World Trade Ctrs. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 2018 WL 6628840, at *14 n.15 (S.D.N.Y. Dec. 18, 2018), on reconsideration, 2019 WL 2250338 (S.D.N.Y. May 23, 2019).

And, as the Bankruptcy Court correctly noted, (Glenn Order, A995-96), this limitation is also apparent from the short memorandum decision in *Horsehead Industries*, which framed its analysis on the condition "if, as alleged, defendant[s] . . . were alter egos." 239 A.D.2d 171, 171 (N.Y. 1st Dep't 1997). I also agree with Chief Judge Glenn that the facts pleaded in Weiss' complaint place it squarely within the line of New York cases that reject the argument that a parent is bound to the terms of a subsidiary's contract when the negotiations themselves clarify the parent's lack of intent to be bound.

Finally, as Chief Judge Glenn concluded, the upshot of Appellant's argument is that a parent involved in a subsidiary's contract negotiations – a not uncommon occurrence – would always be deemed a party to the contract, despite the usual rule that a parent is not liable for its subsidiary's obligations. It would stand the law of alter ego liability on its head to reach such a conclusion, since under alter ego law, "allegations of complete ownership, common officers and personnel, and shared office space are, without more, insufficient" to impose a subsidiary's contractual liability on its parent. Appellant's suggested interpretation of the law is particularly inappropriate in contracts executed by a single-purpose subsidiary, given the inevitable overlap in, for example, officers shared with its parent.

19

Appellant relies on cases that are markedly different from the allegations in, and operative documents attached to, the Amended Complaint. In *RUS, Inc. v. Bay Indus., Inc.*, 2004 WL 1240578 (S.D.N.Y. May 25, 2004), the parent "manifested an unequivocal intent to be bound" by a stock purchase agreement, including by introducing itself as the buyer, and in light of admissions that the parent was bound to close the transaction, and where the shell company was set up for internal purposes to buy the company. *RUS*, 2004 WL 1240578, at *21. Additionally, the parent caused the shell company to breach its contract, which is exactly what did not happen here.

Likewise, in *Warnaco Inc. v. VF Corp.*, 844 F. Supp. 940 (S.D.N.Y. 1994), the parent corporation, which had set up a shell to acquire a licensee, expressly agreed to be bound to promote products bearing licensed trademarks under an agreement signed by its shell company, and then proceeded to violate the contract and Latham Act. *Warnaco Inc.*, 844 F. Supp. at 944, 946.

For these reasons, the Bankruptcy Court did not err, and this Court should therefore affirm the dismissal of Claims I and IV as against both YGWV and All Year.

**IV.    The Bankruptcy Court Properly Dismissed Appellant's Claim II for Breach of the Implied Covenant of Good Faith and Fair Dealing**

In Claim II, Appellant asserts All Year and YGWV breached the implied covenant of good faith and fair dealing under Delaware law.

As against All Year, dismissal of the alter ego breach of contract claim mandates dismissal of this "implied covenant" claim as well. Because the alter ego claim failed, All Year, a non-signatory to the Member LLC Agreement, is not bound by the Agreement – including any implied in law terms -- as a matter of Delaware contract law. See *In re Encore Energy Partners*

*LP*, 2012 WL 3792997, at *14 (Del. Ch. Aug. 31, 2012); *Allen v. El Paso Pipeline GP Co.*, 113 A.3d 167, 178 (Del. Ch. 2014).

YGWV, by contrast, was a party to the Agreement, and so is bound by an implied covenant of good faith and fair dealing. However, Chief Judge Glenn correctly concluded that the complaint fails to state a claim against YGWV on that theory.

It is true that, under Delaware law, an implied duty of good faith and fair dealing inheres in every contract. *Chamison v. HealthTrust Inc.*, 735 A.2d 912, 920 (Del Ch.1999). However, as Judge Glenn found, the implied covenant can be invoked "only in that narrow band of cases where the contract as a whole speaks sufficiently to suggest an obligation and point to a result, but does not speak directly enough to provide an explicit answer. In the Venn diagram of contract cases, the area of overlap is quite small." *In re Zohar III Corp.*, 631 B.R. 133, 202 (Bankr. D. Del. 2021). Delaware law does not permit a party to a contract to rely on the implied duty of good faith and fair dealing in ways that effectively re-write or add additional terms not obtained at the bargaining table. *Allied Capital*, 910 A.2d at 1035; *Zohar*, 631 B.R. at 201–02.

So where the parties addressed the subject matter in the agreement and did not agree to impose the obligation sought to be implied, the law will not alter the contract on the basis of the covenant of "good faith and fair dealing." Indeed, in *Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 920 (Del. 2021), the Delaware Supreme Court described the implied covenant as "a limited and extraordinary legal remedy and not an equitable remedy for rebalancing economic interests that could have been anticipated," and held that the covenant "cannot be invoked when the contract addresses the conduct at issue." See also, *Allied Capital*, 910 A.2d at 1032 ("implied covenant analysis will only be applied when the contract is truly silent with respect to the matter at hand").

As Chief Judge Glenn correctly found, that rule disposes of Count II as against YGWV. The Member LLC Agreement expressly addressed the extent to which interests in the Member LLC could be assigned to third parties in Section 8.1. As repeatedly noted above, that section unambiguously applies only to a Member (Appellant and YGWV) and to an assignment of member interest in the Member LLC. It imposes no transfer restriction on a Member's parent; neither does it impose any obligation that any particular individual be the transferee or remain involved in the business. (See A119 § 8.1(a)).

Appellant points out that, in *Glaxo*, the Delaware Supreme Court commented that the "goal" of the implied covenant of good faith and fair dealing is to "preserve the economic expectations of the parties," *Glaxo*, 248 A. 3d at 919, and avers that it was always Weiss' expectation that he would "partner specifically with Goldman/All Year on the hotel project." (A86–87, ¶37). But as Chief Judge Glenn correctly held, the possibility that there might be a change of ownership interest in YGWV was foreseen by the parties – not only in Section 8.1 of the Agreement, but also (as per Weiss' complaint) by the fact that All Year was originally contemplated to be Weiss' counterparty and partner in the LLC – and arrangement that "would have comported with [Appellant's] claimed 'economic expectations.'" (Order, A956). However, Plaintiff agreed that YGWV could be substituted in place of All Year in the Member LLC Agreement, and further agreed to restrict only YGWV's ability to transfer its (direct) interest in the LLC – not All Year's ability to transfer its (indirect) interest in Member LLC by selling its interest in YGWV.

Weiss argues that, in the only case on all fours with the facts before the Bankruptcy Court, the court found that a non-party parent company was still bound to a partnership agreement's transfer restriction based on the implied covenant of good faith and fair dealing. In

*Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. P'Ship*, 840 F. Supp. 770 (D. Or. 1993) ("Oregon RSA"), *aff'd in part, rev'd in part on other grounds*, 76 F.3d 1003 (9th Cir. 1996), three telephone utilities owned equal shares of a limited partnership. The partnership agreement gave each partner a right of first refusal if one partner wished to transfer its interest. However, the grandparent company of one limited partner agreed to sell its ownership interest in one limited partner to the parent company of another limited partner without providing right of first refusal.

Plaintiff general partner brought an action against the limited partner being sold, its parent corporation, and the parent corporation buyer to establish the right of first refusal to purchase limited partner's interest. The defendants argued that plaintiff did not have a right of first refusal since the buyer was not purchasing the limited partner's "interest" but rather was purchasing the limited partner itself. Even though neither of the partners subject to the partnership agreement was involved in the transaction, the Court disregarded the corporate form and held the sale of the limited partner without offering the right of first refusal to plaintiff violated the covenant of good faith and fair dealing implied in the agreement.

*Oregon RSA* is readily distinguishable from this case despite the similarity in facts. Unlike here, the partnership agreement in *Oregon RSA* indicated an intent by all partners to restrict the indirect transfer of a partnership interest without offering the right of first refusal. While the partner transfer restriction did not explicitly restrict upstream transfers, the *Oregon RSA* court found the sale violated the implied covenant because the clear *intent* of the restriction was to limit all transfers of interest, except to subsidiaries, without offering the right of first refusal. *Oregon RSA No. 6, Inc*, 840 F. Supp. at 774. However, the *Oregon RSA* transfer restriction was broadly written, and the court believed its terms indicated an intent by the

partners to apply the transfer restriction to both direct *and* indirect transfers of interest, i.e., a partner transferring an interest and a partner's interest being transferred. 840 F. Supp. at 773; *see also In re Huber*, No. 11-41013, 2013 WL 6184972, at *4 (Bankr. W.D. Wash. Nov. 25, 2013), *aff'd*, No. 14-5083BHS, 2014 WL 3404964 (W.D. Wash. July 10, 2014). The court was willing to disregard the corporate form and hold the parent company liable for breach of the implied covenant to effect the intent of the parties to restrict *all* transfers.

Section 8.1 is not broadly written. As already discussed, it is clear that the restriction was only intended to restrict direct transfers of interest, not indirect transfers. Unlike in *Oregon RSA*, there would be no basis for concluding that the implied covenant in the Member agreement barred an indirect transfer of YGWV's member interest.

If Appellant wanted the protection, he now claims was an essential part of the deal, he could have bargained for restrictions on indirect transfers of YGWV's member interest or transfers of All Year's interest in YGWV. It did not do so. I thus agree with Chief Judge Glenn that a 30-year-old Oregon decision– a case never followed in Delaware – is not persuasive authority, notwithstanding any factual similarity to the case at bar. The Bankruptcy Court correctly declined to re-write that restriction via an implied duty.

In addition, the implied covenant claim must be dismissed because it is duplicative of Claim I, in that it arises from the same facts and seeks identical relief. Where an implied covenant claim "involv[es] the same conduct as [a] breach of contract claim," it should be dismissed as duplicative. *Affy Tapple, LLC v. ShopVisible, LLC*, 2019 WL 1324500, at *4–5 (Del. Super. Ct. Mar. 7, 2019); *CIBC Bank USA v. JH Portfolio Debt Equities*, 2021 WL 2230976, at *13 (Del. Super. Ct. June 2, 2021). Here, Appellant makes the same factual allegations for both its declaratory judgment and implied covenant claims, compare A98 ¶¶ 94–

24

97, with A99 ¶¶ 103–04, so therefore the implied covenant claim must also be dismissed as

duplicative.

## V.  The Bankruptcy Court Properly Dismissed Appellant's Claims III and V for a Declaratory Judgment that YGWV Dissolved Upon All Year's Filing for Bankruptcy And To Enjoin All Year From Managing Member LLC

Finally, Appellant contends that All Year's chapter 11 filing automatically stripped it of

its membership interest in YGWV by operation of sections 603 and 701 of New York's Limited

Liability corporations Law. He further alleges that this resulted in the automatic dissolution of

the LLC.

Chief Judge Glenn dismissed this claim for two reasons: he deemed Appellant's reading

of sections 603 and 701 to be erroneous; and if it was not, then he deemed those sections

preempted by Section 541 of the Bankruptcy Code. Both grounds are correct.

### A.  The Bankruptcy Court Correctly Held that New York Limited Liability Company Law Did Not Mandate Termination of All Year's Membership Interest in YGWV Upon Filing for Chapter 11 Protection

NYLLCL Section 701(b), entitled "Dissolution," provides as follows:

> Unless otherwise provided in the operating agreement, **the death, retirement, resignation, expulsion, bankruptcy or dissolution of any member** <u>or the occurrence of any other event that terminates the continued membership of any member shall not cause the limited</u> liability company to be dissolved or its affairs to be wound up, and <u>upon</u> the occurrence of any such event, the limited liability company shall be continued without dissolution, <u>unless</u> within one hundred eighty days following the occurrence of such event, <u>a majority</u> in interest of all of the remaining members of the limited liability company or, if there is more than one class or group of members, then by a majority in interest of all the remaining members of each class or group of members, <u>vote</u> or <u>agree in writing to dissolve the limited liability company.</u>

(Emphasis added).

Section 701 was inserted into the New York Limited Liability Corporations Law so that a

limited liability company would not automatically dissolve when a member ceased to be a

member. Section 701(b)'s sole purpose is to make preservation, rather than dissolution, of a limited liability company the default rule (unless overridden by the express terms of the operating agreement). Its purpose is not to enumerate the situations in which membership interests will necessarily terminate. Properly construed, Section 701(b) provides, if any event occurs that would result in termination of a member's interest as per its operating agreement, the LLC shall not dissolve unless the remaining members vote affirmatively to do so. The law expressly includes the bankruptcy of a member as one event that will not automatically result in dissolution of the LLC "unless otherwise provided in the operating agreement." This section was placed into the law to contravene the longstanding principle of partnership law that the death, withdrawal or termination of one partner from the partnership resulted in the dissolution of the partnership.

Appellant's theory is that All Year's bankruptcy caused its membership interest in YGWV to terminate -- and that, because it was the only member of YGWV, YGWV automatically dissolved per Section 701(a)(4).

Appellant's theory is wrong.

Per section 701(b), All Year's bankruptcy is not an event that automatically triggers YGWV's dissolution, unless otherwise specified in the operating agreement. But that operating agreement does not identify All Year's bankruptcy as a dissolution event. Instead, YGWV's LLC agreement provides that YGWV will only dissolve if (i) All Year decides to dissolve it or (ii) a judicial decree of dissolution is entered. (A130 § 7.1). Neither of those things has occurred, so YGWV has not dissolved.

But Weiss argues that because bankruptcy is specifically mentioned as an event that could result in termination of membership, the bankruptcy of the only partner leaves YGWV

without a member, thereby resulting in its automatic termination under 701(a)(4).

Weiss is wrong for three reasons.

First, courts have long understood the opening clause of section 701(b) to refer to events that could terminate a member's interest in an LLC if the operating agreement so provided – not as listing events that would automatically terminate a member's interest in an LLC. *See Man Choi Chiu v. Chiu*, 71 A.D.3d 646, 647 (2d Dep't 2010); *Goyal v. Vintage India NYC, LLC*, 2018 WL 3756882, at *3 (Sup. Ct. N.Y. Cnty. Aug. 8, 2018). They are, as Chief Judge Glenn correctly concluded, simply examples of "any other event that terminates the continued membership of any member," assuming the operating agreement so provides.

The second reason that Weiss' argument must be rejected is that it is preempted by the Bankruptcy Code itself. Section 608 of the NYC LLC Law states that where a member is a corporation and is terminated, the powers of that member may be exercised by its successor. NYCLLC § 608. As will be seen, *infra.*, when a member of an LLC declares bankruptcy, the Bankruptcy Code provides that estate shall succeed to its interests. By Appellant's own admission, All Year's estate succeeded to All Year's membership, A102 ¶¶ 115-16, so automatic dissolution would not be triggered for lack of members.

Finally, Appellant's construction would require single-member LLCs to dissolve automatically upon the passage of any of the listed events; a result that would entirely frustrate 701(b)'s default rule against dissolution unless the operating agreement so provides. Indeed, it would frustrate the intention of All Year, the sole member of YGWV, because the result for which Weiss argues would contravene the terms of the YGWV operating agreement. The Bankruptcy Court correctly concluded the Section 701(b) does not mandate dissolution of a single-member LLC when the member files for chapter 11 protection.

### B.   The Bankruptcy Court Correctly Held that the Chapter 11 Filing Did Not Effectuate an Assignment or Transfer of All Year's Membership Interest in YGWV to the Estate

Appellant also argued that All Year's chapter 11 filing resulted in the assignment or transfer of its membership interest in YGWV to the bankruptcy estate and, therefore, All Year was stripped of its membership interest in YGWV by operation of section 603(a) of the NYLLCL, which terminates a member's membership interest when a member assigns or transfers its membership interest. (Appellant Br. 43–47).

But the Bankruptcy Court correctly held that All Year's chapter 11 filing was not a transfer or assignment because (1) under *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984), a pre-petition debtor and a post-petition debtor in possession are not legally distinct entities, (A1004-1005); and (2) NYLLCL § 603's reference to assignment should not be applicable to a member filing for bankruptcy, especially when it continues to operate the debtor and is a single-member LLC (and thus no other member is impacted by the bankruptcy estate even if it were a new entity). (A1005–1008). For the reasons articulated by the learned Chief Bankruptcy Judge, I agree.

In *N.L.R.B. v. Bildisco & Bildisco*, the Supreme Court held that the debtor-in- possession and the pre-petition debtor are not legally distinct entities, but one in the same. 465 U.S. at 528; see also *In re Ontario Locomotive & Indus. Ry. Supplies (U.S.) Inc.*, 126 B.R. 146, 147 (Bankr. W.D.N.Y. 1991). Accordingly, as the pre-petition debtor and the post-petition debtor in possession are the same legal entity, there is no transfer or assignment of any property upon the commencement of a chapter 11 case.

*In re Nw. Co.*, 2020 WL 2121269 (Bankr. S.D.N.Y. May 1, 2020), thoroughly analyzed this issue in the context of whether a North Carolina statute concerning transfer of an LLC's

assets applies to a bankruptcy filing, ruling that "the mere filing of a chapter 11 petition and the creation of a chapter 11 estate automatically amounts to a transfer or a disposition of substantially all of the Debtor's property for purposes of other laws is simply wrong." Id. at *4. As the *Nw. Co.* court noted, Bildisco resolved this issue by holding that a "debtor-in-possession who takes charge of an estate is not a legally distinct entity from the pre-bankruptcy debtor." Id. at *2. Additionally, the court observed that "there is nothing in the Bankruptcy Code itself that supports the notion that a transfer to a new legal entity takes place when an estate is created." Id. at *3. The court further explained that this is especially so if the debtor, as here, maintains possession "and continues to exercise dominion and control over its businesses and properties." Id. at *4. Here, All Year remains in control as a debtor-in-possession and no assignment or transfer from the prepetition Debtor to the estate occurred as a matter of bedrock bankruptcy law.

Appellant next attempts to distinguish *Bildisco* by limiting it to rejection or acceptance of executory contracts, arguing that section 541(c) of the Bankruptcy Code supports this interpretation. Br. at 45-47. But *Nw. Co.* applied *Bildisco* outside the context of executory contracts and Plaintiff cites no authority cabining *Bildisco*'s holding in that way. Also, the full text of section 541(c) contradicts Plaintiff's reading as it does not provide for the transfer or assignment of an interest to the estate; rather, "an interest of the debtor in property becomes property of the estate . . . notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law." 11 U.S.C. § 541(c) (emphasis added). Further, it would make little sense for the Supreme Court to hold the debtor-in-possession and prepetition debtor must be the same entity to avoid rendering Bankruptcy Code sections governing acceptance and rejection of executory contracts superfluous (as a new, separate legal entity "would not be bound by such contracts in the first place," *Bildisco*, 465 U.S. at 528), yet not apply that same principle to

interests created by a prepetition contract such as an LLC operating agreement.

In the face of *Bildisco* and the reasoned opinion in *Nw. Co.*, Appellant cites *Crawford v. Franklin Credit Mgmt. Corp. and Gebert v. Transp. Admin. Servs.* (out-of-circuit), which concerned whether a post-emergence debtor could pursue unscheduled claims or whether those claims were estate property for the benefit of pre-emergence creditors. 2011 WL 1118584, at *13 (S.D.N.Y. Mar. 23, 2011); *Gebert*, 260 F.3d 909, 913 (8th Cir. 2001); Appellant Br. at 44–45. First, neither of these cases involved a chapter 11 debtor in possession—*Crawford* was an individual chapter 13 case and *Gebert* was a chapter 7 liquidation. In addition, neither case analyzes or involves the issue of whether a transfer or assignment occurs upon the filing of a bankruptcy; rather, those cases concern the effect of a debtor's emergence from bankruptcy and the vesting of a debtor's property rights post- emergence. Each case refers, without analysis of applicable bankruptcy precedent, and in conclusory terms, to the transfer of debtor's assets to the bankruptcy estate. *Crawford*, 2011 WL 1118584, at *13; *Gebert*, 260 F.3d at 913; see also *Nw. Co.*, 2020 WL 2121269, at *3 ("Decisions that speak of the estate as being separate from the debtor are in fact speaking metaphorically.").8

In addition, as the Bankruptcy Court noted, section 603 does not by its terms equate a voluntary assignment with a member's bankruptcy filing and there is an insufficient legal basis to conclude that the statutory language encompasses a bankruptcy filing that creates an estate under the Bankruptcy Code. (A1007–1008). The Bankruptcy Court correctly reasoned that an assignment implies an intention to transfer or divest all control over the thing assigned, and the Amended Complaint contains no allegations that All Year intended any such thing. (A964) ("[T]here are no allegations in the Complaint that All Year intended to divest itself of its interest in YGVV by proceeding as a debtor in possession in bankruptcy."). Moreover, Section 603 is

concerned with multi-member limited liability companies and protecting the other members from

sharing co-membership with a new entity. YGWV is a sole member limited liability company

and therefore Appellant incorrectly asserts that its interest as a member in a different Delaware

limited liability company is of any legal consequence. (A1007-1008).

### C.   The Bankruptcy Court Correctly Held that Appellant's Reading of the NYLLCL Was Preempted by Section 541 of the Bankruptcy Code

Finally, Chief Judge Glenn correctly held that, even if Appellant's reading of sections

603 and 701 were correct, Section 541(c) of the Bankruptcy Code would preempt that reading.

The subject matter here, the legal consequence of a company filing for chapter 11,

naturally implicates one of the quintessential areas where Congress legislates to preempt state

laws. Indeed, the ability to establish "uniform Laws on the subject of Bankruptcies throughout

the United States" is a power expressly granted by the United States Constitution. U.S. Const.

art. I, § 8. Based on this authority "the Bankruptcy Code constitutes a wholesale preemption of

state laws regarding creditors' rights." *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d

66, 82 (2d Cir. 2019). Moreover, where, as here "the statute contains an express pre-emption

clause, we do not invoke any presumption against pre-emption but instead focus on the plain

wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive

intent." *Puerto Rico v. Franklin California Tax- Free Tr.*, 579 U.S. 115, 125 (2016) (internal

quotes omitted).

Appellant's reading of sections 603 and 701 of the NYLLCL squarely conflict with the

plain words of Section 541(c) of the Bankruptcy Code. Section 541(c) of the Bankruptcy Code

commands that a debtor's interest in property becomes property of the estate "notwithstanding

any provision in . . . applicable nonbankruptcy law" that either (A) "restricts or conditions

transfer of such interests by the debtor" or (B) "is conditioned . . . on the commencement of a

case under this title . . . and that effects or gives an option to effect a forfeiture, modification, or

termination of the debtor's interest in property." 11 U.S.C. § 541(c)(1) (emphasis added); see

also *In re S.W. Bach & Co.*, 435 B.R. 866, 877 (Bankr. S.D.N.Y. 2010) ("An interest of a debtor

is property of the estate despite any 'provisions in an agreement, transfer instrument, or

applicable nonbankruptcy law— (A) that restricts or conditions transfer of such interest by the

debtor,' with some exceptions not relevant here."). It is hard to imagine language that more

clearly and expressly preempts Appellant's reading of the NYLLCL to restrict the transfer of All

Year's membership interest and require "forfeiture, modification, or termination" of the

membership interest solely because of All Year's filing for bankruptcy. See, e.g., *In re Thorpe

Insulation Co.*, 677 F.3d 869, 889 (9th Cir. 2012) (holding that Section 541(c) expressly

preempted contract rights). Thus, as the Bankruptcy Court held, not only is there is no

presumption against preemption in matters concerning bankruptcy, but Section 541(c) expressly

preempts conflicting state laws.

Indeed, Bankruptcy Courts reviewing a prior version of NYLLCL section 701 and similar

state laws have held that such laws cannot be read to terminate or modify LLC membership

interests solely due to a bankruptcy filing, as the law would then act to "deprive the trustee of

that interest." See *In re Prebul*, 2012 WL 5997927, at *10-11 (E.D. Tenn. Nov. 30, 2012)

(finding that the trustee succeeded to all of debtor's rights "including those as a member" of an

LLC, that section 701 "was rendered inapplicable here because it would modify or terminate" the

debtor's interest in an LLC, and that, therefore, section 541 of the Bankruptcy Code "renders

inapplicable termination or modification of an interest solely due to a debtor's bankruptcy"); see

also *In re Dixie Mgmt. & Inv., Ltd. Partners*, 474 B.R. 698, 701 (Bankr. W.D. Ark. 2011); *In re

Daugherty Constr., Inc.*, 188 B.R. 607, 611-12 (Bankr. D. Neb. 1995); In re Klingerman, 388

B.R. 677, 678 (Bankr. E.D.N.C. 2008). This is exactly how Appellant's reading of the statute would operate, as All Year's membership interest would be terminated, ipso facto, solely due to its chapter 11 filing. As Section 541(c) squarely precludes that result, the Bankruptcy Code must prevail over Appellant's reading of NYLLCL.

Further, as the Bankruptcy Court correctly reasoned, even if there was a presumption against preemption, there is no compelling state interest weighing against preemption because YGWV is a single-member LLC. A1011-14. Both before the Bankruptcy Court and on appeal, Appellant relied on *Milford Power Co. v. PDC Milford Power, LLC*, 866 A.2d 738 (Del. Ch. 2004), and *Nw. Wholesale, Inc. v. Pac Organic Fruit*, LLC, 357 P.3d 650 (Wash. 2015), to argue that the Bankruptcy Code only "partially preempts" state LLC laws. But *Nw. Wholesale* specifically recognized that its analysis of the preemption issues might be different when analyzing a single-member LLC. 357 P.3d at 657–58. Similarly, one of *Milford Power*'s key considerations was that the Delaware law "expressly recognizes the unique relationships that exist among members of LLCs and protects solvent members from being forced into relationships they did not choose that result from the bankruptcy of one of their chosen co-investors." 866 A.2d at 754. Here, there is no need to balance the rights of other members because YGWV only has one member: the Debtor All Year. *See In re Modanlo*, 412 B.R. 715, 727 (Bankr. D. Md. 2006), aff'd, 266 F. App'x 272 (4th Cir. 2008).

Also, the federal interest in Section 541(c) of the Bankruptcy Code, which is at issue here, is notably different for preemption purposes than Section 365 of the Bankruptcy Code, which was at issue in *Milford Power* and *Nw. Wholesale*. Section 365, for example, does not permit assumption of personal services executory contracts.13 In that regard, the *Milford Power* court concluded that Section 365 was "an expression of Congress's recognition that certain types

33

of executory contracts . . . (e.g., personal services contracts) should not be assumable by a Bankruptcy Trustee. . . when state law would not require the non-debtor parties to accept substitute performance." 866 A.2d at 752. Likewise, *Nw. Wholesale* also concluded that under Section 365, "applicable law excuses a party, other than the debtor [, i.e., the nondebtor members], . . . from accepting performance from or rendering performance to . . . an assignee." 357 P.3d at 662. As explained above, those Section 365 considerations are not present here because YGWV is a single-member LLC, and Section 541 vests in the bankruptcy estate all legal and equitable interests of the debtor (which includes membership interests).

**VI.     The Bankruptcy Court Properly Dismissed Appellant's Claims IV and V to Enjoin All Year From Transferring its Interest in YGWV And From Managing Member LLC**

As the Bankruptcy Court held, Counts IV and V, which seek injunctive relief, cannot stand alone if Appellant's other claims are dismissed. (A1014–15). In fact, injunction is a remedy, not a cause of action. *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 149 (S.D.N.Y. 2003). Dismissal of any substantive claim that could be remediated by injunction necessarily results in dismissal of a "claim" for injunctive relief.

## <u>CONCLUSION</u>

For the foregoing reasons, the order of the Bankruptcy Court is affirmed.

Dated: December 12, 2022

_____
U.S.D.J.

TO ALL PARTIES BY ECF